ShackelboRD, J.,
delivered the opinion of the Court.
In 1858, the complainant — a feme covert — claiming to have a separate property in certain slaves that had been levied upon by the defendant, Smith, as Sheriff, at the instance of John H. Hicks et als¡, creditors of Solomon Green, the husband of the complainant, against -whom they had obtained judgments, and from -which executions had issued, and were levied, as aforesaid — filed her • hill in the Chancery Court for the City of Memphis, against the defendants, to enjoin the sale of the slaves, under the executions, and have them delivered up to her. A fiat was ordered by the Chancellor, awarding the injunction, upon her entering into bond and security, in the sum of $3,000, conditioned to have the negroes forthcoming, to abide the decree rendered in the cause. Thereupon, she entered into bond before the Clerk and Master, with C. C. Cheaves as her surety, in the sum of $3,'000. The conditions of the bond are as follows: “Now, should the said Sarah E. Green, by her next friend, George R. Fleece, prosecute her suit with effect, or, in case she shall fail therein, shall well and truly have said negroes mentioned in complainant’s bill, to-wit: Sampson, Lucretia, Padora, and Jerome, forthcoming to abide the decree to be rendered in the cause, the above obligation to be void; otherwise, to remain in full force and effect.”
In March, 1861, there was a decree in the cause, subjecting the slaves to the payment of the executions. The decree recites: “Unless the complainants, within thirty days from the date of the decree, pay into the office of the Clerk and Master of the Court, the sum of $4,902, *438 to satisfy and discharge said debts and costs, that the complainants deliver up to the Clerk and Master, upon his demand, said slaves; that he proceed to sell them, after advertising,” etc. An appeal was taken to this Court from said decree, and, at the April Term, 1861, of this Court, the same was confirmed, and the cause was remanded to the Chancery Court at Memphis, for the execution of the decree.
On the 5th of July, 1861, the procedendo was filed in the Chancery Court, directing the necessary proceedings to be entered, to subject the property to pay the debts. After this, and during the year 1861 or 1862, the surety, Cheaves, who had the control of the slaves, brought them to the city of Memphis, and proposed to deliver them to the Clerk and Master of the Court, in obedience to the decree of this Court; but no order having been made in the Chancery Court, the Clerk declined to receive them. They remained in the control of Cheaves until they were emancipated in 1865. No proceedings were had in the cause, no demand made upon the parties to deliver the slaves to the Clerk and Master, until the June Term, 1866. The cause was heard before Morgan, Special Chancellor, who, being of opinion, the slaves having been emancipated by the act of the people, a delivery of them, as provided by the decree, would be invalid and of no effect, and in violation of law, he, therefore, decreed against the complainant and her surety, Cheaves, in favor of defendants, for the sum of $3,000, the amount of the bond taken in the cause; from which Cheaves has appealed to this Court.
We think the decree of the Chancellor clearly erro *439 neous. The surety, Cheaves, cannot he made liable beyond the terms and conditions of his bond, which was to have the negroes forthcoming, to abide by such decree to be rendered in the cause. The decree of this Court settled the rights of the parties. The decree of the Chancellor was affirmed, and the cause remanded to the Chancery Court, for the proper orders and decrees. No steps were taken upon the procedendo, until June, 1866; but, in the meantime, after the rendition of the decree in this Court, the surety, Cheaves, took the slaves to Memphis, and proposed to deliver them up to the Clerk and Master. He refused to receive them. No demand was ever made upon the complainant, Mrs. Green, and her surety, to deliver the slaves, as provided by the terms of the decree settling the rights of the parties; consequently, there was no breach of the condition of the bond. The slaves having been emancipated by the act of the people, on 22d of Eebruary, 1865, the conditions of the bond became impossible to be fulfilled.
The general principle is, if a bond, or other obligation, be upon a condition possible at the time it was made, and which afterwards becomes impossible, by the act of God, or the law, or the obligee, the obligation will be saved: Comyrs’ Digest, Condition, D; 1 Par. on Con., 672; 5 Sneed, 685. In this case, the slaves were in custodia legis, subject to the orders of the Court; and until an order was made, and a demand upon the complainant and her surety, to deliver the slaves, in pursuance of the decree, there was no breach of the condition of the bond. Here, the surety, without the demand *440 required by the decree to deliver the slaves, took them to Memphis, and proposed to deliver them to the Clerk and Master of the Court, the proper officer, to whom he was, by the terms of the decree, to deliver them; and he declined to receive them. What more could be done by the parties ? The decree had been affirmed in this Court, the rights of the parties fixed, and the surety proposed to comply with the terms of the bond, by delivering them to the proper officer. To hold him liable, in such a case, would be a violation of every principle of right and justice.
This question came before this Court, in the case in 2 Sneed, 362. In that case, a bill was filed by the complainant, as the owner of slaves, enjoining the sale of them. They had been levied upon to satisfy an execution against his vendor, the test of the execution overreaching the probate and registration of the bill of sale. Upon the filing of the bill, an injunction was awarded. Upon the execution of the bond, the slaves were delivered to the complainant. The bill was dismissed upon demurrer. Upon a seize facias to hold the complainant and his security liable for the debt or value of the slaves, he plead before the decree dismissing the bill, the slaves had died of cholera. The Court say the slaves were in the custody of the law. They perished without fault on the part of complainants, and before the breach of the conditions of the bond; for, until qfter the adjudication upon the demurrer, no breach of the condition of the bond, could be said to have occurred; and to hold the party liable, under such circumstances, for the penalty of the bond, or the *441 value of tlxe slaves, would be subversive of reason and justice. In tbe case under consideration, no breach of tbe bond bad occurred, as no demand bad been made as required by tbe decree, for tbe delivery of tbe slaves; and tbe surety bad offered to comply with tbe terms of tbe decree, by offering to deliver them to tbe proper officer. Tbe slaves being in custodia legis, tbe act of tbe people in emancipating them, on tbe 22d of February, 1865, rendered it impossible to comply with tbe terms of the bond, if demand bad been made. If one agrees to do anything which it may be lawful for him to do, and it becomes unlawful by An Act of tbe Legislature, tbe act avoids tbe promise: 1 Par. on Con., 674. It follows, therefore, it having become impossible to deliver tbe slaves, if a demand bad been made, in consequence of their emancipation, tbe complainant and her surety, under tbe conditions of tbe bond, cannot be held liable for tbe penalty of tbe bond.
Other questions have been argued; but, in tbe view we have taken, it is unnecessary to express any opinion.
Tbe decree of tbe Chancellor will be reversed.